IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ALK 2, LLC *d/b/a* K2 POWERBOATS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 1:22-cv-60-ECM |
| | ) | (WO) |
| K2 MARINE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

Now pending before the Court is the Plaintiff/Counterdefendant K2 Powerboats' ("Powerboats") Motion to Dismiss (doc. 23) Counts I, IV, V, VI, VII, and VIII of the Defendant/Counterplaintiff K2 Marine, Inc's ("Marine")[1] amended counterclaim complaint (doc. 21). Powerboats originally filed this action seeking a declaration that 1) Powerboats did not infringe upon Marine's service mark or tradename rights, 2) Marine does not have tradename or service mark rights in Marine's mark, and 3) Marine has not suffered any harm resulting from Powerboats' use of the Powerboats word or design marks (doc. 1). Marine filed an eight-count counterclaim complaint (doc. 18), which it later amended (doc. 21).

Marine's counterclaim alleges trademark infringement under Section 32 of the Lanham Act (Count I), trademark infringement under Section 43 of the Lanham Act (Count

---

[1] As the Plaintiff/Counterdefendant and Defendant/Counterplaintiff's business names both begin with "K2," the Court will respectively refer to the parties as "Powerboats" and "Marine."

1

II), common law trademark and tradename infringement under Alabama law (Count III), trademark and tradename dilution under Alabama law (Count IV), deceptive trade practices under Alabama law (Count V), unfair competition under Alabama law (Count VI), wrongful interference with a business relationship under Alabama law (Count VII), and requests declaratory judgment (Count VIII).  Powerboats moved to dismiss Counts I, IV, V, VI, VII, and VIII.  Based on a review of the record, the applicable law, and for the reasons stated, Powerboats' motion to dismiss is due to be GRANTED in part and DENIED in part.

## II. JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121 over Marine's claims arising under the Lanham Act.  The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Marine's related state law claims.

## III.   LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience

2

and common sense." *Id.* at 679 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555–56. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

### IV. FACTS

At the motion to dismiss stage, the Court will accept the non-movant Marine's factual allegations as true. Marine is a corporation organized under the laws of Arkansas. Powerboats is a limited liability company organized under the laws of Alabama. Both companies are engaged in the business of manufacturing powerboats.

Marine first began its business of custom boat manufacture on July 1, 2004. Since that date, Marine has used the K2 Marine trademark/tradename. Marine sells its boats through dealers across the Southeast. Marine has one dealer in Gulf Shores, Alabama and maintains other dealers in Florida, Georgia, Louisiana, Mississippi, South Carolina, North Carolina, Texas, and Arkansas.

Powerboats began its business in 2020 and began using its K2 Powerboats mark between October and December of 2020. Powerboats uses the internet and a franchisee network throughout the Southeast to sell its products. Powerboats sells its products to the same customers, retailers, dealers, and distributors as those targeted by Marine. The marks

used by both Powerboats and Marine begin with "K2," and both marks are used in the custom manufacture of powerboats in the Southeast. Powerboats has used its own mark with an awareness of Marine's mark and the manner in which Marine uses its mark.

Marine engages in extensive advertising and promotion of its mark and has curried "a tremendous amount of good will and name recognition as a result" of its efforts. (Doc. 21 at 10). Marine fears that Powerboats' mark "will cause substantial actual confusion and a likelihood of confusion among boat customers." (*Id.* at 11).

Marine filed a federal trademark application for its mark on September 23, 2021. Powerboats has also filed a federal trademark application for its mark. The United States Patent and Trademark Office ("USPTO") has informed Marine that if Powerboats receives a federal trademark, Marine's application may be rejected "because of a likelihood of confusion between the two marks." (*Id.* at 12).

## V. DISCUSSION

A. Count I: Federal Trademark Infringement, 15 U.S.C. § 1114(1)

Marine asserts that Powerboats violated the Lanham Act through its imitation of Marine's mark. 15 U.S.C. § 1114(1) prohibits an unauthorized person to

> use in commerce any reproduction, counterfeit, copy, or colorable imitation of a *registered mark* in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1) (emphasis added).

Persons who violate this provision are "liable in a civil action by the registrant." *Id.* The Lanham Act defines a registered mark as "a mark registered in the United States Patent

4

and Trademark Office under this chapter or under the Act of March 3, 1881, or the Act of February 20, 1905, or the Act of March 19, 1920." 15 U.S.C. § 1127.

Powerboats argues that Marine is not the registrant of a "registered mark" because Marine does not hold a federal trademark over its mark. Thus, because Marine is not the registrant of a registered mark, Powerboats cannot be liable to Marine under § 1114(1).

Marine admits that it does not currently hold a federal trademark on its mark and does not claim registration of its mark such that Marine would meet the definition of a "registrant" under the Lanham Act. Rather, Marine argues that its trademark infringement claim is a compulsory counterclaim because Marine would retroactively gain constructive use of its mark should its trademark application be approved. Marine also argues that dismissing Marine's claim would create duplicitous litigation in the case Marine later acquires a federal trademark.

Marine's unregistered mark is not protected under § 1114, and Marine does not have standing to sue under this provision. *Heron Dev. Corp. v. Vacation Tours, Inc.*, 2017 WL 5957743, at *8 (S.D. Fla. Nov. 30, 2017) ("[O]nly trademark registrants have standing to sue under § 1114 of The Lanham Act."); *see also B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 144 (2015) (identifying § 1114 as the infringement provision for registered marks and § 1125 as the infringement provision for unregistered marks). As Marine's mark is an unregistered mark, the appropriate venue for Marine's infringement claim is under § 1125.

Given Marine's lack of standing, its argument that its § 1114 claim is a compulsory counterclaim fails. Claims that have not yet matured cannot be considered a compulsory

5

counterclaim. Fed. R. Civ. P. 13(a)(1) ("A pleading must state as a counterclaim any claim that—*at the time of its service*—the pleader has against an opposing party." (emphasis added)); *Steinberg v. St. Paul Mercury Ins. Co.*, 108 F.R.D. 355, 358 (S.D. Ga. Nov. 20, 1985) ("A counterclaim which is likely to arise or is contingent at the time the defendant serves his answer, is not "matured" for the purposes of Rule 13(a)."); *Stone v. Dep't of Aviation*, 453 F.3d 1271, 1276 (10th Cir. 2006) ("[A] party does not have a matured claim, sufficient to be deemed a compulsory counterclaim, if that claim is subject to dismissal because all the conditions precedent to asserting it have not yet occurred.").

While trademark infringement counterclaims may at times be compulsory in a declaratory judgment action, *see Classic Liquor Imps., Ltd. V. Spirits Int'l B.V.*, 201 F. Supp. 3d 428, 440 (S.D.N.Y. Aug. 19, 2016) ("[T]rademark infringement is generally a compulsory counterclaim in the context of a declaratory action for non-infringement."), such can only be true when the counterplaintiff already holds a federal trademark and accordingly holds a ripe claim.  Here, Marine admits that it does not yet hold a federal trademark.

As discussed, Marine's lack of a federal trademark makes a trademark infringement claim under § 1114 unmature.  Because such a claim has not yet arisen or matured, it cannot be a compulsory counterclaim under Rule 13(a).  Although Marine will need to file a new claim if it later gains federal trademark rights, this potential for "duplicitous litigation" cannot remedy Marine's current lack of standing.  Accordingly, Powerboats' motion to dismiss Count I is due to be granted.

B. Count IV: State-Law Trademark and Tradename Dilution

Marine next asserts that Powerboats has violated Alabama common law and § 8-12-17 of the Alabama Code for trademark and tradename dilution. Section 8-12-17 provides relief to "the owner of a mark which is famous and distinctive . . . against another person's commercial use of a mark, if such use begins after the famous mark has become famous and is likely to cause dilution of the famous mark." Ala. Code. § 8-12-17. The claimant in a trademark dilution claim accordingly must prove that "1) its mark is famous; 2) the defendant adopted its mark after the [claimant]'s mark became famous; 3) the defendant's mark diluted the [claimant]'s mark; and 4) the defendant's use is commercial and in commerce." *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166, 1176 (M.D. Ala. June 11, 2008) (quoting *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1269 (S.D. Fla. Oct. 26, 1999)). Alabama's trademark dilution statute provides non-exhaustive factors for courts to consider in evaluating whether a mark is famous, including

> (1) The duration, extent, and geographic reach of advertising and publicity of the mark in this state, whether advertised or publicized by the owner or third parties.
> (2) The amount, volume, and geographic extent of sales offered under the mark in this state.
> (3) The extent of actual recognition of the mark in this state or a significant geographic area in this state.
> (4) Whether the mark is the subject of a state registration in this state, or a federal registration under the Act of March 3, 1881, or under the Act of February 20, 1905, or on the principal register under the Trademark Act of 1946, as amended.

Ala. Code § 8-12-17.

A statutory comment explains that § 8-12-17 "codifies the common law rule governing injunctive relief." *Id.* § 8-12-17 cmt. The parties' briefs do not address Marine's

7

common law trademark dilution claim. However, because the Alabama statute has replaced common law dilution claims, Marine cannot pursue independent common law trademark dilution claims. Accordingly, Marine's claim is dismissed to the extent Marine intended to maintain a separate action under Alabama common law.

Powerboats moves to dismiss Marine's statutory dilution claim on the grounds that Marine insufficiently pleaded that Marine's mark is famous. Powerboats argues that Marine's counterclaim contains only threadbare recitals of the elements of trademark dilution amounting to conclusory allegations. According to Powerboats, because Marine maintains a single dealer in Alabama, Marine's mark cannot be widely recognized throughout Alabama such that it should be considered famous. Powerboats also claims that Marine's other factual allegation—Marine's claim that it has used its mark for almost two decades—is insufficient to establish its mark as famous.

Marine claims that it sufficiently pleaded trademark dilution and points out that its mark need only be famous throughout "a significant geographic area in [Alabama]." *Id.* § 8-12-17(b). Marine points to its allegations that it has been advertising since July of 2004, that it extensively promotes and advertises its mark, and that its mark bears a tremendous amount of good will and name recognition. Marine argues that the factor analysis for a mark's fame is fact intensive and inappropriate to resolve on a motion to dismiss.

After examining the counterclaim and the briefs, the Court concludes that Powerboats impermissibly attempts to resolve issues of fact at the motion to dismiss stage. Powerboats challenges the element of fame yet concedes that Marine has made factual allegations regarding its use of its mark for almost twenty years and its Alabama dealer in

8

Gulf Shores. Although Powerboats claims that these facts are insufficient to establish fame, Powerboats' authority supports the general proposition that few marks are famous. This authority, however, is insufficient to defeat a claim on a motion to dismiss. The factor analysis is fact-specific and is more properly decided after discovery has been conducted. Marine need not demonstrate that its mark is *likely* famous at this stage in litigation, it need only establish that its mark is *plausibly* famous. Marine has satisfied this pleading standard. Accordingly, Powerboats' motion to dismiss Count IV is due to be denied.

C. Count V: Deceptive Trade Practices

Marine next alleges that Powerboats has violated "Alabama Code § 8-19-1, *et seq.*" under the Alabama Deceptive Trade Practices Act ("ADTPA"). However, Marine fails to identify which provision of the ADTPA Powerboats violated. To the extent Marine invites the Court to cherry-pick through the ADTPA and identify any provision Powerboats potentially violated, the Court declines to do so. For this reason, as well as the reason discussed in the following section, Powerboats' motion to dismiss Count V is due to be granted.

D. Count VI: Unfair Competition Under Ala. Code § 8-19-5

Marine next alleges that Powerboats has engaged in unfair competition in violation of § 8-19-5 of the ADTPA. However, Marine fails to identify which of the provision's twenty-seven subdivisions Powerboats violated. The ADTPA provides a private right of action to consumers against "[a]ny person who commits one or more of the acts or practices declared unlawful under this chapter and thereby causes monetary damage to a consumer." *Id.* § 8-19-10. Thus, the ADTPA only provides a private right of action to consumers

9

damaged under the ADTPA.² The ADTPA defines a consumer as "[a]ny natural person who buys goods or services for personal, family, or household use." *Id.* § 8-19-3(4).

Powerboats argues that Marine lacks standing to bring this claim because the ADTPA only provides such a private right of action to consumers. Because Marine does not meet the ADTPA's definition of a consumer, Marine lacks standing to bring a claim.

Marine does not refute Powerboats' argument that Marine is not a consumer under the ADTPA. Rather, it protests that other plaintiffs have made similar claims in the past. To the extent Marine does not have a claim under the ADTPA, Marine asks that its claim be allowed to proceed as a claim for wrongful interference with a business relationship.

Here, Marine has not alleged that it is a natural person who has purchased Powerboats' goods or services. Accordingly, the ADTPA does not provide Marine a private right of action as to Count VI. That another plaintiff has attempted a similar claim in the past cannot remedy Marine's lack of standing on this claim. Any claim Marine has for wrongful interference with a business relationship is addressed with Count VII. For the foregoing reasons, Powerboats' motion to dismiss Count VI of Marine's counterclaim is due to be granted.

E. Count VII: Wrongful Interference with a Business Relationship

Marine next asserts a claim for wrongful interference with a business relationship under Alabama law. The elements for a claim of wrongful interference with a business

---

² The ADTPA also provides a private right of action to other "person[s]" damaged under the ADTPA, but only with respect to subdivisions 19 and 20 of § 8-19-5. Ala. Code § 8-19-10. Subdivisions 19 and 20 address pyramid schemes and misrepresentations of earnings in "seller assisted marketing plans," neither of which is encompassed in Marine's complaint. *Id.* § 8-19-5.

10

relationship are "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Group, L.L.C. v. PRS II, LLC*, 30 So. 3d 5, 14 (Ala. 2009).

Powerboats argues that Marine has failed to allege factual support for the first, second, and fourth elements of its claim. Marine argues that it pleaded sufficient facts to establish each of these elements. Here, Marine has failed to plead sufficient facts indicating Powerboats' knowledge of a business relationship or its intentional interference with that business relationship. Accordingly, Powerboats' motion to dismiss Count VII is due to be granted.

F. Count VIII: Declaratory Judgment

Finally, Marine seeks relief under 15 U.S.C. § 1125(a) and 28 U.S.C. § 2201 requesting 1) a declaration with respect to Powerboats' rights in its mark and the use of its name, 2) a declaratory judgment that Marine has used its name as a trade name since October 28, 2003 and that such use precludes Powerboats from obtaining the declaratory relief it seeks, and 3) a declaratory judgment that Marine has used its name as a trade name since October 28, 2003 and that use precludes Powerboats from obtaining the relief it seeks from the USPTO.

Powerboats moves to dismiss Marine's first and third requests under Count VIII. Powerboats argues that Marine's first request is unclear and is due to be dismissed. In the alternative, Powerboats requests a more definite statement. The Court agrees that Marine's

request is unclear. Marine's first request will be dismissed without prejudice and Marine shall have leave to provide a more definite statement as to this request.

Powerboats does not move to dismiss Marine's second request for declaratory relief. Powerboats argues that Marine's third request is due to be dismissed for lack of subject matter jurisdiction because federal courts do not have jurisdiction over pending applications of unregistered marks. The Court finds that it lacks subject matter jurisdiction over Marine's third declaratory request. *Theia Techs. LLC v. Theia Grp., Inc.*, 2021 WL 291313, at *36 (E.D. Pa. Jan. 28, 2021) ("The general rule is that a court lacks subject matter jurisdiction to cancel a pending trademark application that has yet to mature into a registration."). Thus, Powerboats' motion to dismiss is due to be granted as to Marine's third request.

Accordingly, Powerboats' motion to dismiss Count VIII is due to be granted. The dismissal of Count VIII, however, does not foreclose declaratory relief if Marine succeeds on its substantive claims.

## VI. CONCLUSION

For the reasons discussed above, it is hereby ORDERED as follows:

1. The Plaintiff/Counterdefendant's motion to dismiss is GRANTED as to Counts I, V, VI, VII and VIII.

2. The Plaintiff/Counterdefendant's motion to dismiss is DENIED as to Count IV.

3. The Defendant/Counterplaintiff has leave to file a more definite statement as to its first request for declaratory relief until and including January 29, 2023.

Done this 23rd day of December, 2022.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE